**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **BRADLEY S. SHELTON,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-14-2031 |
| **UNITED STATES OF AMERICA,** *et al.*, | * | |
| Defendants. | * | |
|  | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM AND ORDER**

Pending before me in this Federal Tort Claims Act case, 28 U.S.C. § 2671 ("FTCA"), are the Government's motions to dismiss Plaintiff's claims against it for lack of subject matter jurisdiction and Capitol Technology Services, Inc.'s ("CTSI") contribution claim against it for failure to state a claim, based on its assertion that it cannot be liable for the alleged harm. Also pending is the Government's motion to dismiss CTSI's indemnification claim against it, based on its assertion that CTSI was actively negligent. Because the jurisdictional facts are inextricably intertwined with the facts material to Plaintiff's negligence claim, and a genuine dispute exists as to the existence and extent of CTSI's and the Government's liability, I will deny the Government's motions, assume jurisdiction, and proceed to discovery on the merits of this case as described below.

I.  **BACKGROUND**[1]

On August 29, 2011, Plaintiff Bradley S. Shelton, "while attempting to open and dismantle a switchgear cabinet" in Building 2 at the Goddard Space Flight Center in Greenbelt, Maryland ("Goddard"), was electrocuted and severely injured. Compl. ¶¶ 4, 11, ECF No. 1. At the time, Plaintiff was performing electrical work for independent contractor NCM Demolition & Remediation LP ("NCM"), which the United States, through its agencies National Aeronautics and Space Administration ("NASA") and the United States Army Corps of Engineers ("USACE") had awarded a contract to demolish Building 2. Compl. ¶¶ 13, 23. Although the power to Building 2 was turned off, the switchgear was not de-energized. Compl. ¶ 10; U.S. Dep't of Labor, Occupational, Safety & Health Admin. ("OSHA") Inspection Report, ECF No. 26-5, 619–20, 625. Plaintiff believed that the switchgear had been de-energized along with the building. Compl. ¶ 7. He has brought suit against the United States, NASA, USACE, and CTSI, another independent contractor that provided facilities operations and maintenance ("O&M") services at Goddard at the time of Plaintiff's injury. *Id.* at 1; NASA's O&M Contract with CTSI, ECF No. 23-8, 379. CTSI has filed a Cross-Claim against the Government, NASA, and USACE for contribution and indemnification.[2] ECF No. 22.

---

[1] For the purposes of resolving the Government's Rule 12(b)(1) Motion to Dismiss, I consider the facts alleged in Plaintiff's Complaint as evidence, *see Richmond, Fredericksburg & Potomac Ry. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991), and I also consider the facts established by exhibits attached to the Complaint and both parties' briefings, *see United States ex rel. Ackley v. Int'l Business Machines Corp.*, 76 F. Supp. 2d 654, 659 (D. Md. 1999); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[2] The only proper defendant for the claims brought pursuant to the FTCA is the United States, as "[t]he FTCA expressly provides that federal agencies are not amenable to suit under its provisions." *Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 608 (D. Md. 2011) (citing 28 U.S.C. § 2679(a); *Holmes v. Eddy*, 341 F.2d 477, 480 (4th Cir. 1965)). NASA and the

According to Plaintiff, it was NASA's responsibility to turn off the power to Building 2, including the switchgear, but "NASA did not communicate to USACE and USACE did not communicate to the demolition subcontractor [NCM] that electrical rooms were off-limits" and the switchgear had not been de-energized. Compl. ¶ 9. As the Government sees it, however, it had no role in ensuring that the electrical lines were de-energized. Def.'s Mem. 2. The Government contends:

> [T]he responsibility for workplace safety and accident prevention generally and for disconnecting and de-energizing all utilities related to the demolition project had been delegated by contract from the United States to NCM, an independent contractor. Moreover, any responsibilities related to utility shut-off that may have been retained by the United States were also delegated by contract to another independent contractor, CTSI.

*Id*. Consequently, the Government argues, it cannot be liable and therefore this Court lacks subject matter jurisdiction under the FTCA. On that basis, the United States moves to dismiss under Rule 12(b)(1). ECF No. 23.[3] Similarly, the United States moves to dismiss CTSI's cross-claim for contribution under Rule 12(b)(6), or for summary judgment on the same, arguing that it "has shown in its pending motion to dismiss that it cannot be liable to Plaintiff in tort," and therefore "CTSI can have no right to contribution." Def.'s Mem. as to Cross-Cl. 3, ECF No. 31-1. The United States also moves for dismissal of CTSI's cross-claim for contribution under Rule 12(b)(6), or for summary judgment on the same, insisting that "one who is alleged to have been 'actively negligent' cannot obtain tort indemnification from another," and "Plaintiff's Complaint

---

USACE will be dismissed as defendants and cross-defendants. As for the state-law negligence claim against CTSI, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

[3] The United States and Plaintiff fully briefed the motion. ECF Nos. 23-1, 26, 28. CTSI also filed an Opposition. ECF No. 27. A hearing is not necessary *See* Loc. R. 105.6.

against CTSI leaves no doubt that the tortious conduct Plaintiff attributes to CTSI constitutes active negligence, precluding its indemnity claim against the United States."[4] *Id.*

## II. STANDARDS OF REVIEW

"A court should grant a Rule 12(b)(1) motion 'if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *El-Amin v. Int'l Longshoremen's Ass'n Local No. 333*, No. CCB-10-3653, 2011 WL 2580630, at *2 (D. Md. June 28, 2011) (quoting *Evans v. B.F. Perkins, Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). "A Rule 12(b)(1) motion to dismiss is not limited to challenges to jurisdiction appearing from the face of the complaint. In considering the allegations, the court may consider extrinsic evidence and, if such evidence is disputed, may weigh and determine the facts." *United States ex rel. Ackley v. Int'l Business Machines Corp.*, 76 F. Supp. 2d 654, 659 (D. Md. 1999) (citations omitted). The Court "regard[s] the pleadings' allegations as mere evidence on the issue," and may consider additional evidence. *Richmond, Fredericksburg & Potomac Ry. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Notably, if "'a defendant proffers evidence that calls the court's jurisdiction into question,'" then "no presumption of truthfulness attaches to the plaintiff's allegations." *Ackley*, 76 F. Supp. 2d at 659 (quoting *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998)).

When a defendant challenges subject matter jurisdiction, the burden is on the plaintiff to prove that subject matter jurisdiction exists. *See Evans*, 166 F.3d at 647; *El-Amin*, 2011 WL

---

[4] The United States filed its Motion to Dismiss Cross-Claim or, in the Alternative, for Summary Judgment and Memorandum in Support, ECF Nos. 31 & 31-1, and CTSI filed an Opposition, ECF No. 35. The United States did not file a reply, and the time for doing so has passed. *See* Loc. R. 105.2(a). A hearing is not necessary *See* Loc. R. 105.6. Because this motion can be determined on the pleadings, while taking judicial notice of the analysis and denial of the Government's Rule 12(b)(1) motion, *see* Fed. R. Evid. 201, I will treat this motion as one for dismissal and not for summary judgment.

2580630, at *2.  To this end, limited discovery on the jurisdictional issue is, at times, appropriate before the court grants a Rule 12(b)(1) motion to dismiss.  *See Watson v. CSA, Ltd.*, 376 F. Supp. 2d 588, 590 (D. Md. 2005) (noting that, "[i]n anticipation of Defendants' jurisdictional challenge, the Court allowed limited discovery on the question of [subject matter] jurisdiction"); *Ackley*, 76 F. Supp. 2d at 669 (noting that, following oral argument on defendants' motion to dismiss, the Court had permitted "limited discovery pertaining to subject matter jurisdictional issues, as permitted" by what is now Fed. R. Civ. P. 56(d)).[5]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court may dismiss a claim or complaint if it fails to state a claim upon which relief can be granted.  *Tucker v. Specialized Loan Servicing, LLC*, ---- F. Supp. 3d ----, 2015 WL 452285, at *8 (D. Md. Feb. 3, 2015).  In resolving a Rule 12(b)(6) motion, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79.  *See Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

---

[5] Fed. R. Civ. P. 56(d)(2) provides that, with regard to a motion for summary judgment, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . allow time to . . . take discovery."

## III.  DISCUSSION

Plaintiff has identified at least one document, written by the Government, referring to NASA's duty to turn the electricity in Building 2. The NASA Supervisor's Accident Investigation Report & Loss Source Identification states: "All building power was to have been disconnected by NASA on 08-16-11. . . . The accident occurred because NCM was told that all power to the building had been terminated on 08-16-2011 by NASA O&M, and for whatever reason the feed to this switchgear was still live." Pl.'s Opp'n Ex. 24, Consol Exs. 674, ECF No. 26-6. Also, notes from the August 5, 2011 NASA Goddard Building 2 Kickoff Meeting state that "Jeff (NASA) will assemble staff on 8/8 to coordinate disconnections lockout/tagout of utilities," Def.'s Mem. Ex. 14, Consol Exs. 459, ECF No. 23-16, and the USACE Accident Investigation Report states that the "indirect cause(s)" of injury was a "[m]is-communication from NASA O&M Department to the NASA Project Manager, Jeffrey Steir, and NCM Demolition and Remediation, LP," Pl.'s Opp'n Ex. 27, Consol Exs. 699, ECF No. 26-9, both of which show that the Government had a role in disconnecting the electricity.

To support its assertion that it was not responsible for shutting off the electricity, the Government identifies contractual language that delegates the responsibility. Def.'s Mem. 4–5. For example, the Award/Task Order to NCM for Building 2 Abatement & Demolition stated that NCM "shall disconnect/remove utilities associated with the building being demolished." Def.'s Mem. Ex. 3, Consol Exs. 174, ECF No. 23-5. Similarly, the original Solicitation of Work stated that NCM was "responsible for coordination with the utility providers for the termination and or removal of utility services," and would "[d]isconnect, cap, remove, and/or reroute utilities serving the [as] per each respective task order." Def.'s Mem. Ex. 2, Consol. Exs. 74, ECF No. 23-4. Also, a Task Order to CTSI stated that the "Contractor shall verify the feeder is de-

energized at the primary disconnect switches in building #002 electrical vault." Def.'s Mem. Ex. 9, Consol Exs. 447, ECF No. 23-11. Additionally, the Government notes that the NASA Goddard Space Center Accident Prevention Plan provides that "[d]isconnection of electrical utility lines will be performed by a qualified electrical subcontractor" and that "[a]ll branches of the electrical service inside buildings where hazardous materials removal and asbestos abatement are being performed will be disconnected by a qualified electrical subcontractor." Def.'s Mem. Ex. 5, Consol Exs. 314, ECF No. 23-7.

Clearly, the evidence is disputed as to whose responsibility it was to de-energize the switchgear. Therefore, the Court "may weigh and determine the facts." *Ackley*, 76 F. Supp. 2d at 659. But, this factual determination also is key to determining liability in this negligence action. *See UBS Fin. Servs., Inc. v. Thompson*, 94 A.3d 176, 190 (Md. Ct. Spec. App. 2014) ("The existence of a legal duty is an essential element of [a] negligence claim[].").

The Government's effort to wrap a liability determination into a jurisdictional issue is flawed because the Fourth Circuit has held that "when jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). In *Kerns*, the appellant brought an FTCA suit against the United States for the wrongful death of her husband, when the defendant's contract employee, Scott, negligently killed the decedent. *Id.* at 189. The government in that case challenged the jurisdiction of the district court, contending that the employee was not acting within the scope of her employment at the time of the tragic accident. *Id.* at 191. There were factual issues as to whether the employee was on personal errands at the time of the accident or whether she was on her way to a job-related conference.

*See id*. Without resolving the factual dispute, the district judge granted the Government's motion to dismiss for lack of subject matter jurisdiction. *Id*. The Fourth Circuit reversed and remanded, holding that the jurisdictional facts in dispute were so inextricably intertwined with the merits of the case that the district judge erred in granting the Government's motion. *Id*. at 195.

Here, the Government challenges whether this Court has subject matter jurisdiction under the FTCA, based on its assertion that it did not have the responsibility of turning off the power, such that it cannot be liable for Plaintiff's injury. This is not the threshold issue that the Government portrays it to be. Rather, it necessitates a liability-related determination. Thus, the disputed jurisdictional facts in this case are very much intertwined with the issue of liability, much the same as in *Kerns*. The factual dispute as to who had the responsibility of shutting off the electricity should not be resolved at this time because it is inextricably intertwined with liability. *See Kerns*, F.3d 187 at 195. "[W]hen the jurisdictional facts and the facts central to a tort claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Id*. (citing *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009)). Therefore, I will deny the Government's 12(b)(1) motion to dismiss Plaintiff's claims against it and proceed to discovery on the merits of this case. *See id*.

Likewise, I will deny the Government's motion to dismiss CTSI's Cross-Claims. Because liability cannot be determined at this time, it is reasonable to infer that the Government could be liable on Plaintiff's claims and, consequently, on CTSI's contribution claim, such that CTSI has stated a claim for contribution. *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6). As for CTSI's indemnification claim, the Government misstated the law in asserting that "one who is *alleged* to have been 'actively negligent' cannot obtain tort indemnification from another." *See* Def.'s Mem. as to Cross-Cl. 3 (emphasis added). Rather, "'one who is *guilty* of active

negligence cannot obtain tort indemnification.'" *Pulte Home Corp. v. Parex, Inc.*, 942 A.2d 722, 731 (Md. 2008) (quoting *Franklin v. Morrison*, 711 A.2d 177, 187 (1998)) (emphasis added). Therefore, it is not dispositive that "Plaintiff's Complaint against CTSI leaves no doubt that the tortious conduct Plaintiff attributes to CTSI constitutes active negligence, precluding its indemnity claim against the United States," Def.'s Mem. as to Cross-Cl. 3, as CTSI's negligence and its nature have yet to be determined. Consequently, CTSI has stated a claim for indemnification against CTSI. *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

## **ORDER**

Accordingly, it is, this 5th day of August, 2015, hereby ORDERED that the Government's Motions to Dismiss, ECF Nos. 23 and 31, ARE DENIED. However, improperly-named Defendants National Aeronautics and Space Administration and the United States Army Corps of Engineers ARE DISMISSED as Defendants and Cross-Defendants. Count I of the Complaint shall continue as to the United States only; Count II of the Complaint shall continue as to CTSI; and the Cross-Claims shall continue as to the United States only.

/S/
Paul W. Grimm
United States District Judge

ee/lyb